IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. Case No.: SAG-05-0061 |
| TERRENCE SMITH, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Defendant Terrence Smith, who is serving a total sentence of 960 months in the Bureau of Prisons, has filed a motion seeking compassionate release ("Compassionate Release Motion").[1] ECF 652. He subsequently filed a number of supplements to that motion, including one entitled "Motion to Reduce Petitioner's Sentence Pursuant to Disparity of Sentence," ECF 691. *See also* ECF 693, 706. The government filed two oppositions. ECF 656, 707. Mr. Smith then filed a "rebuttal" to the opposition, ECF 720, and a Motion to Compel Decision, ECF 721. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons addressed below, this Court will GRANT the government's Motion to Seal, ECF 715, DENY Mr. Smith's Motion to Compel Decision as MOOT, ECF 721, DENY Mr. Smith's Disparity Motion, ECF 691, and GRANT Mr. Smith's compassionate release motion, ECF 652, in part and reduce his sentence of imprisonment in this case to a total of 480 months.

---

[1] Mr. Smith's Motion was filed by court-appointed counsel. ECF 652. Mr. Smith subsequently asked counsel to withdraw before filing a reply memorandum.

## A. FACTUAL BACKGROUND

At Smith's trial, the government proved that he was the leader of the "721 Gorilla Dynasty/721 Gorilla Region," a set of the Bloods that trafficked crack cocaine, ecstasy, cocaine, and marijuana in the Northern District of Baltimore City.

On January 14, 2005, Smith called a Bloods meeting at his home to discuss Edna McAbier, a 57-year-old resident and community activist in the neighborhood where the set trafficked its narcotics. McAbier regularly reported drug activity to the authorities. At the meeting, the attendees determined that McAbier needed to be killed. They discussed shooting her with a shotgun but ultimately decided to kill her by firebombing her home. Smith ordered members of the Bloods, along with one of their drug suppliers, Nakie Harris, to do the firebombing.

After the meeting, at Smith's direction, Harris and some of the Bloods members procured lighters, gasoline, and bottles to make Molotov cocktails. They gathered at a home across the street from McAbier's, and Harris constructed the Molotov cocktails. They also arranged for a false call to be made to 911, alleging that a rape was taking place at a location away from the area, to divert law enforcement resources.

At about 1 a.m. on January 15, 2005, McAbier was watching television and heard loud crashes on her roof. She looked out her front window and saw liquid burning outside the front of her home. Harris and another Bloods member had thrown Molotov cocktails at the front entrance of the home, while other co-conspirators threw them at the back entrance of the home. Both the front and back of McAbier's home were burned in the attack, but McAbier did not suffer physical injury because not all of the Molotov cocktails caught fire, allowing her to escape the residence.

At trial, a jury convicted Smith of six counts including conspiracy, witness tampering, use of a firearm in a crime of violence, using fire and explosives in a felony, and making firearms. On

February 21, 2006, United States District Judge J. Frederick Motz imposed a total sentence of 960 months of incarceration. ECF 188. Judge Motz subsequently reimposed the same sentence at a resentencing after appeal in 2008. ECF 280. The sentence constituted a 187-month upward variance from the top of the advisory guideline range.

### B. COMPASSIONATE RELEASE

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1); 18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i). Once a motion for compassionate release is properly filed, the Court (1) determines whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; and (2) considers whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

3

Here, the Government concedes that Smith adequately exhausted his administrative remedies as to his compassionate release motion.[2] *See* ECF 656 at 1. Thus, this Court turns to whether he has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

The Fourth Circuit has held that "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant policy statement is U.S.S.G. § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" (the "Policy Statement"). The Sentencing Commission amended that Policy Statement in recent years, with the amendments taking effect on November 1, 2023.

Before the November, 2023 amendments, the Policy Statement began with the phrase: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment" for certain enumerated reasons. U.S.S.G. § 1B1.13 (2021). In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit determined that the language in the Policy Statement did not encompass motions filed by defendants themselves, meaning that in connection with such motions district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2020)).

The November 1, 2023 amendments changed the beginning of the Policy Statement to read: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C.

---

[2] The Government contested whether he had exhausted his remedies as to his Disparity Motion. ECF 714 at 8. As this Court construes the Disparity Motion as simply a supplement to the Compassionate Release Motion, separate exhaustion was unnecessary.

4

§ 3582(c)(1)(A), the court may reduce a term of imprisonment" for certain specified reasons. U.S.S.G. § 1B1.13 (2023) (emphasis added). Thus, the amended Policy Statement is now expressly applicable to defendant-filed motions, like Smith's.

Although the November, 2023 amendments more closely cabin the "extraordinary and compelling reasons" a court may consider, there remains a catchall provision, "Other Reasons," at U.S.S.G. § 1B1.13(b)(5). That provision permits a court to find an extraordinary and compelling reason for relief where a "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." Paragraphs (1) through (4) address advanced age, serious illness, death in a defendant's family causing a need to care for family members, or defendants who have been victimized in jail.

In this case, Smith argues two independent extraordinary and compelling reasons. First, he relies upon a combination of factors amounting, in his view, to sufficient circumstances to trigger the catchall provision. Those factors are comprised of his "relatively youthful age (24) at the time of the offenses," his rehabilitation, and the fact that his 80-year sentence vastly exceeds the typical sentences for attempted murder. Second, he cites § 1B1.13(b)(6). which allows a sentencing reduction where:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Smith relies upon the Supreme Court's ruling in *Dean v. United States*, 581 U.S. 62 (2017), which ruled that a sentencing court can vary below a defendant's advisory guideline range to achieve an

appropriate aggregate sentence in light of a consecutive, mandatory-minimum sentence imposed for a simultaneous conviction under 18 U.S.C. § 924(c). At the time of Smith's sentencing, he contends that the Fourth Circuit prohibited such a variance. *See, e.g.*, *United States v. McCullers*, 395 Fed. App'x 975, 978 (4th Cir. 2010).

This Court need not reach the *Dean*/§ 1B1.13(b)(6) issue because it agrees with Smith that the combination of factors amounts to sufficient circumstances under the catchall provision. This Court begins with the length of Smith's sentence. Of course, it is clear that, in 2008, Judge Motz believed Smith should serve 960 months. He imposed that sentence twice. But, today, an 80-year sentence is grossly disproportionate to sentences being imposed for even murder offenses. Sentencing data reflects that the average sentence imposed over the past five years for murder in this district is 286 months, with a median of 300 months. *See* United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2020–2024, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited January 22, 2026). Of course, while Smith and his associates intended to commit murder, McAbier survived the firebombing and suffered no physical injury. Smith's sentence, which is well more than three times the average or median sentence for actual murder, is therefore extraordinarily high, even when considering the witness tampering aspect of this case that seemingly informed the sentencing court's determination that a more robust sentence was warranted.

In combination with other factors, this Court is also permitted to consider the evidence of Smith's rehabilitation. The government correctly points out that Smith's earlier years of incarceration were marked by sporadic significant infractions, albeit with large periods of good compliance interspersed. *See* ECF 723-1 (noting weapons and/or fighting infractions in 2011,

6

2013, 2017, and 2020). Since March of 2020, however, Smith has been entirely infraction-free, demonstrating that he has learned to comport his behavior with rules and expectations.

Finally, although this Court views it as the least significant of the contributing factors, this Court recognizes Smith's commission of this offense at the relatively young age of 24, before the decision-making part of the adolescent brain is fully developed. That factor, in combination with Smith's evidence of rehabilitation and the extraordinary length of his existing sentence, constitutes an extraordinary and compelling reason warranting further consideration of whether compassionate release should be afforded to Smith.

This Court then turns to the 18 U.S.C. § 3553(a) factors in determining whether it should reduce Smith's sentence. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019); *United States v. Logan*, Cr. No. CCB-10-0203, 2019 WL 3391618 *1 (D. Md. July 26, 2019). Those factors include (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) "the need . . . to protect the public from further crimes of the defendant"; and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also consider the defendant's conduct since his conviction, which would include his disciplinary record in prison. *See Logan*, 2019 WL 3391618 at *1.

The nature and circumstances of Smith's offense were of course extremely serious: He engaged in and led a conspiracy to firebomb McAbier's house because she was interfering with his gang's efforts to sell drugs. While McAbier was not injured, the lack of injury was a function of good fortune, as Smith's actions were intended to and could well have caused her death. This Court is persuaded, however, that a forty-year sentence is sufficient, in terms of just punishment,

7

general deterrence, and maintaining the hierarchy of culpability originally assessed by Judge Motz, to address Smith's leadership role in this serious but ultimately non-fatal offense.

Further, as to the need to protect the public, Smith's present anticipated release date, if this Court does not reduce his sentence, is August 17, 2074, when he will be in his nineties if he lives that long. This Court is not persuaded that what is essentially a life sentence is necessary to ensure that Smith is able to comply with the conditions of supervised release or refrain from posing a threat to community safety. Despite his criminal history years ago and his earlier infractions in the BOP, Smith's present record suggests that he will not pose a significant threat to community safety once he is released to carefully crafted conditions of supervised release at the conclusion of his sentence. This Court believes, therefore, that reducing Smith's sentence in this case to 480 months will preserve his appropriate place at the top of the hierarchy of co-defendants and constitute just punishment for the role he played in this significant crime. But that sentence is also sufficient, but not greater than necessary, to address all of the purposes of the sentencing statute, § 3553(a).

This Court therefore will enter an amended judgment reducing Smith's total sentence in this case to 480 total months of incarceration as follows: 60 months as to each of Counts One, Two, Three, and Six, to run concurrent with one another, 360 months as to Count Four, to run consecutive to the sentence imposed for Counts One, Two, Three, and Six, and 60 months as to Count Five, to run consecutive to all other counts. The variance from the advisory guidelines is justified by Smith's age at the time of the offense, his rehabilitation, and the total length of the sentence once the consecutive sentences are added, which is sufficient but not greater than necessary to achieve the purposes of the sentencing statute.

Dated: February 6, 2026                                  /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge